IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KARSTEN O. ALLEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:21-cv-00213 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| NORVELL, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Karsten O. Allen ("Plaintiff"), a Virginia inmate proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 against Correctional Officers Sgt. T. Norvell, R. Mullins, Lt. G.V. Horne, A.T. Collins, Institutional Hearings Officer T. Lowe, and Assistant Warden Kevin McCoy (collectively "Defendants"). Plaintiff alleges that, while housed at Keen Mountain Correctional Center ("KMCC") in Oakwood, Virginia, Defendants failed to provide adequate due process in connection with a disciplinary proceeding. Plaintiff also alleges that Sgt. Norvell failed to keep him safe from "staff" at KMCC, and that he filed a false disciplinary report in retaliation against him. For the reasons discussed below, the court will grant Defendants' motion to dismiss for failure to state a claim.

## I.   BACKGROUND

The facts are taken from Plaintiff's *pro se* complaint and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In Plaintiff's complaint, he alleges that on October 13, 2020, while being housed in B Building, Corrections Officer Hurley[1] (and others) threatened him after he requested to speak with a sergeant about filing a complaint and lawsuit concerning officer misconduct. (Compl. ¶ 9 [ECF No. 1].) Plaintiff claims that Hurley subsequently conspired with Unit Manager L. Fields[2] to file false disciplinary charges against him. (*Id.*) On January 27, 2021, within the same housing unit, Plaintiff claims that Sergeant Waldron[3] threatened violence against him and falsified a disciplinary charge which caused him to be placed in segregation. (*Id.* ¶ 10.)

While in segregation, Plaintiff spoke with Lt. Kole[4] about the threats Hurley and Waldron made and requested that he not be returned to B Building. (*Id.* ¶ 11.) Lt. Kole informed Plaintiff that he was responsible for inmates' housing assignments after they were released from segregation, and that Plaintiff would not be returned to B Building. (*Id.*) When Plaintiff was released from segregation on February 19, 2021, however, he was placed in B Building. (*Id.*) Plaintiff then submitted a request to be moved on the next available workday, but his request apparently went unanswered. (*Id.*)

On March 2, 2021, Plaintiff claims he witnessed Hurley and other officers assault another inmate. (*Id.* ¶ 12.) The next day, Plaintiff filed an emergency grievance requesting to be transferred to another housing unit because he was afraid of Hurley and possible retaliation by him. (*Id.*) On March 4, 2021, Plaintiff informed Defendant Mullins that he feared for his

---

[1] Corrections Officer Hurley is not a party to this action.

[2] Unit Manager Fields is not a party to this action.

[3] Sergeant Waldron is not a party to this action.

[4] Lt. Kole is not a party to this action.

safety. (*Id.* ¶ 13.) Mullins asked Plaintiff if he wanted to make a statement and, when Plaintiff indicated that he did, Mullins handcuffed Plaintiff and took him to Defendant Norvell's office where an "Inmate Fear for Life or Safety" form was waiting for him. (*Id.*) Prior to filling out the form, Norvell asked Plaintiff about his issues, told him to write a detailed statement, and indicated that he would be placed in segregation if he filled out the form. (*Id.*) Plaintiff indicated that he did not care about being placed in segregation and filled out the form. (*Id.*)

Once Plaintiff finished writing his statement, Norvell read it and commented, "[T]hese are some serious allegations you're making against staff." (*Id.*) Norvell then radioed Lt. Flemming[5] and stated that Plaintiff was making "some pretty detailed accusations" and was unwilling to return to his cell.[6] (*Id.*) After Norvell spoke with Lt. Flemming, officers escorted Plaintiff to segregation. (*Id.*) As Plaintiff was being secured in his cell, Mullins told Norvell, "We can't charge him if he has a legitimate reason to fear for his safety," to which Norvell responded, "Well, I can't talk to you about this in front of him." (*Id.*) Later that day, Plaintiff was served with a disciplinary charge—written by Norvell and approved by Defendant Horne—for refusing an order to return to his cell. (*Id.* ¶¶ 14–15.)

For his ensuing disciplinary hearing, Plaintiff requested Inmate B. Chism, Mullins, and Lt. Flemming as witnesses and requested the "Inmate Fear for Life or Safety" form he completed as documentary evidence. (*Id.* ¶ 16.) At the hearing—which was overseen by

---

[5] Lt. Flemming is not a party to this action.

[6] Pursuant to the VDOC Operating procedures, if an officer in charge determines that a potentially dangerous situation exists *between inmates*, the inmates should be immediately separated in different housing units or in segregation. (OP 830.6 at § IV(A)(2).) Here, Plaintiff was not afraid of other inmates. Instead, he was allegedly in fear of staff.

Defendant T. Lowe—Plaintiff argued that he never refused to return to his housing unit because he was never given an order to do so, and that Norvell falsified the charge in retaliation for Plaintiff reporting officer misconduct. (*Id.* ¶ 17.)

At the hearing, Lowe denied two of Plaintiff's witness requests. (*Id.*) Lowe denied Flemming's testimony on relevancy grounds because he was not present when the alleged order was disobeyed. (*Id.*) Lowe also refused to allow Chism to testify because Chism had failed to return the witness statement form on time. (*Id.*) Plaintiff then presented the "Inmate Fear for Life or Safety" form, asserting that KMCC policy required him to be placed in protective custody or equivalent, and that he could not have disobeyed an order to return to his cell based on that policy. (*Id.*) Lowe allegedly responded that Plaintiff was not allowed to fear staff. (*Id.*)

At the conclusion of the hearing, Lowe found Plaintiff guilty and imposed a $15 fine. (*Id.* ¶ 18.) Under the "Reason for Decision" heading on the Hearing Disposition form, Lowe stated, "Based on a preponderance of the evidence a valid disciplinary offense report, the testimony of the reporting officer that the accused did disobey an order by not returning to his cell when instructed to do so. The accused did not offer any other defense to refute the charge." (Compl. Ex. I [ECF No. 1-1].) Defendants Collins and McCoy both later reviewed and approved the decision. (Compl. ¶¶ 19, 22.) Three days after the hearing, Plaintiff spoke with inmate Chism, who said that he never received a witness form and that, if he had, he would have made a statement and returned it. (*Id.* ¶ 20.)

Plaintiff believes Defendants' actions deprived him of his First, Eighth, and Fourteenth Amendment rights, and requests a total of $64,015 in damages. (*See id.* ¶¶ 32–37.) Plaintiff's complaint asserts six separate claims: (1) Norvell violated his Fourteenth

Amendment right to due process by filing a false disciplinary report against him (Count I); (2) Norvell violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment (Count II); (3) Norvell violated Plaintiff's First Amendment right to petition a government tribunal for redress by filing a false report (Count III); (4) Horne, McCoy, and Collins violated Plaintiff's Fourteenth Amendment right to due process by reviewing and approving his disciplinary conviction (Count IV); (5) Mullins violated Plaintiff's Fourteenth Amendment right to due process by submitting a falsified witness statement at Plaintiff's disciplinary hearing (Count V); and (6) Lowe violated Plaintiff's Fourteenth Amendment right to due process by refusing witnesses, submitting an inadequate reason for a disciplinary decision, and failing to be an impartial decisionmaker at Plaintiff's disciplinary hearing (Count VI). The matter is now before the court on Defendants' motion to dismiss Counts I, II, IV, V, and VI.

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### III.   ANALYSIS

Plaintiff filed his complaint alleging violations under 42 U.S.C. § 1983. Section 1983 creates a private cause of action against anyone who,

> under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. To state a cause of action under § 1983, a plaintiff must allege facts that, if true, would show that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that the deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

#### A. Fourteenth Amendment Due Process: Counts I, IV, V & VI

Plaintiff claims that Defendants denied him due process in connection with a disciplinary hearing in which he was fined $15. (Compl. ¶¶ 23–30.)

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). In other words, a plaintiff must identify a sufficient liberty or property interest before the court examines whether the procedures attendant to its deprivation were constitutionally sufficient. *Kentucky Dep't of Corr.*

*v. Thompson*, 490 U.S. 454, 460 (1989). In the context of prisons, an inmate typically can demonstrate a protected interest by showing an "atypical and significant hardship . . . in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Plaintiff was convicted for "disobeying an order" at a disciplinary hearing and fined $15. (ECF No. 1-1, Ex. I.) Plaintiff asserts a protected property interest in "the funds in his inmate account," which includes the $15 fine. (*Id.* ¶ 31.) The court disagrees. While neither the Supreme Court nor the Fourth Circuit has specified the threshold at which the Due Process Clause is implicated when it comes to monetary fines, several Judges in this district have held that small monetary fines assessed at disciplinary hearings do not trigger due process protections. *See, e.g.*, *Roscoe v. Mullins*, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty was a $15 fine), *aff'd on other grounds*, No. 19-7343 (4th Cir. Oct. 28, 2020); *Ferguson v. Messer*, No. 7:CV00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three $12 fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not impose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a property interest). Accordingly, the court finds that Plaintiff's $15 fine was not an "atypical and significant hardship" that triggered due process protections. *See Sandin*, 515 U.S. at 484.

Because Plaintiff failed to demonstrate a protected liberty or property interest,[7] the

---

[7] Importantly, Plaintiff does not claim that he suffered any loss of good-time credit, or that he was otherwise subject to a separate atypical or significant hardship that would constitute a protected liberty or property interest. (Plt.'s Mem. Opp. to Defs.' Mot. to Dismiss at 8 [ECF No. 19-1].)

court declines to examine the sufficiency of the process afforded to him at the disciplinary hearing. *See Kentucky Dep't of Corr.*, 490 U.S. at 460. For this reason, Defendants' motion to dismiss Counts I, IV, V, and VI will be granted.[8]

### B. Eighth Amendment Cruel and Unusual Punishment: Count II

Plaintiff contends that Norvell violated his Eighth Amendment right to be free from cruel and unusual punishment because he filed a false disciplinary report in retaliation for Plaintiff reporting staff misconduct or, alternatively, that Norvell failed to protect Plaintiff from staff by returning him to Building B. (Compl. ¶¶ 23–24.)

#### 1. Norvell's False Disciplinary Report

As to Plaintiff's first contention, false misbehavior reports do not implicate the Eighth Amendment's prohibition on cruel and unusual punishment. *See Reynolds v. Madden*, No. 21-CV-00955-BAS-RBB, 2022 WL 874966, at *10 (S.D. Cal. Mar. 24, 2022) (holding that claims of false disciplinary reports do not constitute cruel and unusual punishment).

"The Eighth Amendment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Id.* (collecting cases). "[A]

---

[8] Even if a $15 fine triggered a due process right, though, Defendants would nevertheless be entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether an official is entitled to qualified immunity, the court must first determine whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Second, the court must evaluate whether the right was clearly established at the time of the defendant's conduct. *Smith*, 781 F.3d at 100. As discussed previously, judges in this district have determined that $15 fines assessed at disciplinary hearings do not trigger due process concerns. Moreover, neither the Fourth Circuit nor the Supreme Court has held that the imposition of a $15 fine for a disciplinary infraction can give rise to a constitutional tort claim. It follows that no reasonable official would have known of any possible violation of constitutional rights, even if this court were to conclude that imposing such a fine in this instance gave rise to one. *See Bowling v. Clarke*, No. 7:19CV00453, 2021 WL 440794 (W.D. Va. Feb. 8, 2021) (reaffirming an earlier ruling that a $15 fine triggered due process protections but concluding that defendants were entitled to qualified immunity on this issue).

prisoner claiming an Eighth Amendment violation must allege facts to plausibly show: (1) the deprivation he suffered was 'objectively, sufficiently serious;' and (2) that prison officials acted with deliberate indifference to a serious risk to his health or safety in allowing that deprivation to take place." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Thomas v. Ponder*, 611 F.3d 1144, 1150–51 (9th Cir. 2010)). Because Plaintiff's allegation of a false disciplinary charge that resulted in a minimal fine comes nowhere close to the "objectively, sufficiently serious" bar necessary to invoke the Eighth Amendment's protections, Plaintiff has failed to state a claim under that constitutional provision.

### 2. Norvell's Duty to Protect

As to Plaintiff's second argument, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer*, 511 U.S. at 832. For a claim based on a failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison official in question has a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see Helling v. McKinney,* 509 U.S. 25, 34–35 (1993). Specifically, a prison official's state of mind must be one of "deliberate indifference to inmate health or safety." *Id.* Deliberate indifference is "a very high standard" that cannot be met by a showing of "mere negligence." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "A plaintiff establishes 'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). Importantly, "the official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "It not enough that [officials] should have recognized it; they actually must have perceived the risk." *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). "Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not' will not give rise to a claim under the Eighth Amendment." *Danser*, 772 F.3d at 347 (quoting *Farmer*, 511 U.S. at 838).

Plaintiff contends that Norvell failed to protect him by returning him to Building B, where he witnessed non-defendant officers assault another inmate, and was allegedly threatened by those same officers. (Compl. ¶¶ 9–12, 24.) By Plaintiff's own admission, however, he was transferred to segregation at his request after meeting with Norvell. (*Id.* ¶ 13.) Regardless, merely expressing a generalized fear of future harm is not sufficient to establish a claim for deliberate indifference under the Eighth Amendment. *See Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008) (holding that statements by an inmate that he was in fear for his safety "are insufficient to alert officers to a specific threat"). Indeed, "a claim of threats and harassment alone, without allegations of accompanied injury or use of force, is insufficient to state an Eighth Amendment claim." *Brooks v. Brennan*, No. 9:12-cv-0624 NAM/CFH, 2013 WL 3716399, at *9 (N.D. N.Y. July 12, 2013); *see Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called [plaintiff] names . . . did not allege a constitutional violation"); *see also Strickland v. Halsey*, 638 F. App'x 179, 185 (4th Cir. 2015) (acknowledging the general proposition that knowledge of mere threats by a defendant does not constitute deliberate indifference).

Although Plaintiff asserts that he witnessed an assault by officers and was threatened by them, he does not allege that these threats or observations were accompanied by any injuries

- 11 -

or use of force in any respect. (Compl. ¶¶ 9–12.) While these alleged threats may have been directed at Plaintiff's health, they fail to demonstrate that he was in any actual danger from staff, or that Norvell disregarded a *substantial* risk of harm to Plaintiff. Rather, Plaintiff contends that these threats indicated the intent of some "staff" to harm him at some undetermined future date. Without more specificity about the alleged threats, however, Plaintiff fails to state a claim that Defendants were deliberately indifferent to a substantial risk of harm. *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D. N.Y.1998) (explaining that "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") Accordingly, Defendants' motion to dismiss Count II will be granted.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's complaint fails to state a claim for violations of due process or cruel and unusual punishment against Defendants. Defendants' motion to dismiss Counts I, II, IV, V, and VI will be granted. The court, however, will permit Plaintiff to amend Count II of his complaint, as it relates to Norvell's duty to protect, within 21 days, if he so chooses. The court also notes that Count III remains pending.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 27th day of September, 2022.

>   */s/ Thomas T. Cullen*
>   HON. THOMAS T. CULLEN
>   UNITED STATES DISTRICT JUDGE