## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **KARSTEN O. ALLEN**, | ) | |
| Plaintiff, | ) | Civil Action No. 7:21cv00213 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **T. NORVELL**, | ) | By:   Pamela Meade Sargent |
| Defendant. | ) | United States Magistrate Judge |
| | ) | |

Plaintiff, Karsten O. Allen, ("Allen"), a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against several staff at Keen Mountain Correctional Center, ("Keen Mountain"), alleging that they denied him due process concerning a disciplinary proceeding, subjected him to cruel and unusual living conditions, failed to protect him and retaliated against him. By Memorandum Opinion and Order entered September 27, 2022, the court granted the defendants' partial motion to dismiss Allen's Complaint, dismissing all of Allen's claims except his retaliation claim against Sgt. Norvell. (Docket Item Nos. 26 & 27.) The court also granted Allen the opportunity to file an Amended Complaint concerning his claim that Sgt. Norvell failed to protect him. Allen filed an Amended Complaint as to the failure to protect claim, and Sgt. Norvell has moved to dismiss the Amended Complaint.[1] For the reasons discussed below, the court will grant the motion to dismiss. Accordingly, only Allen's retaliation claim against Sgt. Norvell remains.

---

[1] It is well-settled that an amended pleading supersedes the original pleading. *See Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) (amended pleading renders original pleading of no effect). Accordingly, the court will consider only Allen's Amended Complaint for purposes of ruling on Sgt. Norvell's motion to dismiss.

# I.

In his Amended Complaint, (Docket Item No. 28), Allen alleges that on October 13, 2020, while exiting a building, he "engaged in a minor dispute" with an officer concerning a "medically prescribed wrist brace" on Allen's arm. Allen states that he ultimately removed the brace and proceeded to exit the building, while "still exchanging words with" the officer.  As he was leaving, Officer Hurley shouted at him, "only inches from his face," that Allen should "shut [his] damn mouth or [he could] go back to the pod!" Allen alleges that he immediately turned back toward the pod and told the officers that he wanted complaint forms to submit against them. When Allen arrived at the entrance to the pod, he pressed a button to have the booth officer let him in. However, he claims that Officer Hurley "radioed to the booth" to tell the booth officer not to open the gate, "essentially trapping [Allen] in the vestibule." Allen states that Officer Hurley then "charged toward [him] in an obvious attempt to portray as though he would assault [Allen] if [Allen] were to say or do something that would prove detrimental." Allen claims that as Officer Hurley charged at him, he yelled, "Are you threatening us?!" When Allen requested to see the sergeant, two officers "then came to Hurley's side and aggressively surrounded [Allen] in a show of force and intimidation. . . ." Allen alleges that he "remained silent," and Officer Hurley ordered him to the middle of the vestibule and called the K9 officer. Allen claims that the K9 officer "held the barking, aggressive animal at bay to further intimidate" him. Allen states that these "actions left little doubt that Hurley intended to harm [him] if he were to submit the complaint."

On January 27, 2021, Allen alleges that he was involved in "another altercation" with two other officers concerning Allen's authorization "to be at pill call." Allen states that during the incident, Sgt. Waldron called him "a ni**er and a boy" after Allen refused to answer another officer's question about whether Allen understood him. As a result of the altercation, Allen was taken to segregation. During

the escort there, Allen claims that Officer Waldron told him that he wanted Allen to "flinch" so that he "could slam [Allen] to the ground and knock [his] teeth out of his mouth." Allen argues that it was "no secret" that Sgt. Waldron had a "reputation for violence," and on another occasion, Allen overheard Sgt. Waldron tell an officer that Waldron wanted to break an inmate's jaw during an extraction.

On February 19, 2021, Allen was assigned to a housing unit where both Sgts. Hurley and Waldron also were assigned. Upon entering the unit, Allen claims that Sgt. Hurley stated that he remembered Allen. A day or two later, Allen alleges that when Sgt. Hurley was passing out food trays, he stopped at Allen's door and said that he was "not going to have any shit out of [Allen] in this pod." On March 2, 2021, Allen alleges that Officer Hurley and other officers were involved in an altercation with another inmate, which resulted in Officer Hurley spraying that inmate with mace. Allen was moved out of that housing unit on March 3, 2021.

Allen states that on March 4, 2021, he informed Sgt. Norvell "briefly of the specific threats and his pending litigation[,] but because of the limited space on the Fear for Safety Form, [Allen] simply summarized when Norvell told him to write a statement." Allen claims that "[d]espite Norvell's knowledge of this risk" that Allen had been threatened with violence, Allen "was later served with a disciplinary report . . . for refusing to obey Norvell's order to return to the housing unit" where Sgts. Hurley and Waldron were assigned.

Allen argues that the "western region" of the Virginia Department of Corrections "has a documented history of staff violence against inmates" and the "region's violent practices allowed that officers at any time could antagonize or provoke an inmate into a situation [and] then use even the most minimal reaction as a so-called justification for [use of] force."

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Twombly*, 550 U.S. at 555; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a Pro se complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### III.

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates and to protect them "from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); (quotations omitted); *Odom v. S.C. Dep't of Corrs.*, 349 F.3d 765, 770 (4th Cir. 2003). Prison officials who are deliberately indifferent to "specific known risks of such harm," violate an inmate's Eighth Amendment rights. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)).

To state a viable failure to protect claim under § 1983, a plaintiff must show: "(1) serious or significant physical or emotional injury, and (2) that the prison officials had a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834; *Odom*, 349 F.3d at 770; *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). As to the first prong, the deprivation alleged must be, "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. The inmate must show that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm.'"

*Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834).

As to the second prong, the requisite state of mind is one of "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference is "a very high standard" that cannot be met by a showing of "mere negligence." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "A plaintiff establishes 'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Danser v. Stansberry*, 772 F.3d 340, 346 (quoting *Farmer*, 511 U.S. at 837). Importantly, "the official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Danser*, 772 F.3d at 346 (quoting *Farmer*, 511 U.S. at 837). "It not enough that [officials] should have recognized it; they actually must have perceived the risk." *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). "Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not' will not give rise to a claim under the Eighth Amendment." *Danser*, 772 F.3d at 347 (quoting *Farmer*, 511 U.S. at 838).

Here, Allen fails to allege any serious or significant physical or emotional injury. Instead, he alleges only generally that individuals who are not defendants threatened him and used profanity and racial slurs against him. "Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *see also Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D. N.Y. 1998) (holding "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983"). Because Sgts. Hurley and Waldron's actions (threats and harassment) are

insufficient to state a §1983 claim, the court cannot conclude that Sgt. Norvell violated Allen's constitutional rights by failing to protect him from their actions. Further, Allen has not alleged sufficient facts for the court to conclude that Sgt. Norvell knew of and disregarded a risk of harm. Allen alleges only that on March 4, 2021, he informed Sgt. Norvell "briefly of the specific threats and his pending litigation" and that he "simply summarized" his concerns even thought Sgt. Norvell "told him to write a statement." (Am. Compl. at 5.) Accordingly, the court concludes that Allen's Amended Complaint fails to state a viable failure to protect claim.

## IV.

For the reasons discussed, the court will grant Sgt. Norvell's motion to dismiss Allen's failure to protect claim. Accordingly, only Allen's retaliation claim against Sgt. Norvell remains.

**ENTERED:** September 7, 2023.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE