CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

May 01, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division**

| | |
|---|---|
| **KARSTEN O. ALLEN,**<br>**Plaintiff,**<br><br>v.<br><br>**T. NORVELL,**<br>**Defendant.** | **MEMORANDUM OPINION**<br>Civil Action No. 7:21cv00213<br><br>By: Pamela Meade Sargent<br>United States Magistrate Judge |

Plaintiff, Karsten O. Allen, ("Allen"), a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against several staff at Keen Mountain Correctional Center, ("Keen Mountain"). Only Allen's retaliation claim against defendant T. Norvell remains.[1] This matter is before the court on Defendant's Motion For Summary Judgment, (Docket Item No. 50) ("Motion"), to which Allen has responded, (Docket Item No. 55-1) ("Response"). Following notice pursuant to 28 U.S.C. § 636(c), all parties filed written consent to the exercise of jurisdiction in this case by a magistrate judge. Pursuant to Order entered on November 10, 2022, (Docket Item No. 35), the case was transferred to the undersigned magistrate judge to handle the proceedings herein, including dispositive orders, pursuant to 28 U.S.C. § 636(c)(1). Upon review of the Motion and the evidence presented, I will deny the Motion.

I. Facts

In his Complaint and Amended Complaint, (Docket Item Nos. 1, 28), which were made under penalty of perjury, Allen alleges that on October 13, 2020, while

---

[1] All of Allen's other claims have been dismissed. (Docket Item Nos. 27, 45.)

1

exiting a building, he "engaged in a minor dispute" with an officer concerning a "medically prescribed wrist brace" on Allen's arm. Allen states that he ultimately removed the brace and proceeded to exit the building, while "still exchanging words with" the officer.  As he was leaving, Officer Hurley shouted at him, "only inches from his face," that Allen should "shut [his] damn mouth or [he could] go back to the pod!" Allen alleges that he immediately turned back toward the pod and told the officers that he wanted complaint forms to submit against them. When Allen arrived at the entrance to the pod, he pressed a button to have the booth officer let him in. However, he claims that Officer Hurley "radioed to the booth" to tell the booth officer not to open the gate, "essentially trapping [Allen] in the vestibule." Allen states that Officer Hurley then "charged toward [him] in an obvious attempt to portray as though he would assault [Allen] if [Allen] were to say or do something that would prove detrimental." Allen claims that as Officer Hurley charged at him, he yelled, "Are you threatening us?!" When Allen requested to see the sergeant, two officers "then came to Hurley's side and aggressively surrounded [Allen] in a show of force and intimidation…." Allen alleges that he "remained silent," and Officer Hurley ordered him to the middle of the vestibule and called the K9 officer. Allen claims that the K9 officer "held the barking, aggressive animal at bay to further intimidate" him. Allen states that these "actions left little doubt that Hurley intended to harm [him] if he were to submit the complaint."

     On January 27, 2021, Allen alleges that he was involved in "another altercation" with two other officers concerning Allen's authorization "to be at pill call." Allen states that during the incident, Sgt. Waldron called him "a ni**er and a boy" after Allen refused to answer another officer's question about whether Allen understood him. As a result of the altercation, Allen was taken to segregation. During the escort there, Allen claims that Sgt. Waldron told him that he wanted Allen to "flinch" so that he "could slam [Allen] to the ground and knock [his] teeth

out of his mouth." Allen argues that it was "no secret" that Sgt. Waldron had a "reputation for violence," and on another occasion, Allen overheard Sgt. Waldron tell an officer that Waldron wanted to break an inmate's jaw during an extraction.

On February 19, 2021, Allen was assigned to a housing unit where both Officer Hurley and Sgt. Waldron also were assigned. Upon entering the unit, Allen claims that Hurley stated that he remembered Allen. Allen said, on the next work day, he submitted a request to be moved, which went unanswered. A day or two later, Allen alleges that when Hurley was passing out food trays, he stopped at Allen's door and said that he was "not going to have any shit out of [Allen] in this pod." On March 2, 2021, Allen alleges that Officer Hurley and other officers were involved in an altercation with another inmate, which resulted in Officer Hurley spraying that inmate with mace. Allen stated that he submitted an Emergency Grievance "pleading" to be moved on March 3, 2021. A copy of this Emergency Grievance is attached to the Complaint as Exhibit B. (Docket Item No. 1-1 at 2.) On this Emergency Grievance, Allen wrote:

> I have been threatened by Ofc. Hurley and Sgt. Waldron. I've previously told staff not to house me in this building as I've been called racial slur[s], threatened, and falsely charged by these officers. I have filed a lawsuit against Ofc. Hurley and am in the process of the same against Sgt. Waldron. I cannot control when the courts will serve the suit and I fear for my life and safety from these officers when they [receive] the suit. I need to be removed from this building for fear of the retaliation in my safety and security.

(Docket Item No. 1-1 at 2.) Unit Manager C. Shelton responded to this Emergency Grievance and determined it did not meet the definition of an emergency. Shelton advised Allen to file an Informal Complaint addressing his concerns.

In his Amended Complaint, Allen stated that on March 4, 2021, he informed Sgt. T. Norvell, ("Norvell"), "briefly of the specific threats and his pending

3

litigation[,] but because of the limited space on the Fear for Safety Form, [Allen] simply summarized when Norvell told him to write a statement." Allen claims that "[d]espite Norvell's knowledge of this risk" that Allen had been threatened with violence, Allen "was later served with a disciplinary report "…for refusing to obey Norvell's order to return to the housing unit" where Officer Hurley and Sgt. Waldron were assigned.

Allen's Response also is made under penalty of perjury, (Docket Item No. 55-1), along with the Supplemental Affidavit Of Karsten Allen, (Docket Item No. 55-2) ("Affidavit"). In the Affidavit, Allen stated that he submitted an emergency grievance at Keen Mountain stating that he had been threatened with physical violence by Sgt. Waldron and Officer Hurley. Allen stated that, on May 4,[2] 2021, he told Officer Mullins that he feared for his safety from Sgt. Waldron and Officer Hurley. Officer Mullins removed Allen from his cell, put him in restraints and escorted him to Sgt. Norvell's office. According to Allen, once in Sgt. Norvell's office, Norvell asked him to fill out a "fear for safety" form. Allen said, after Sgt. Norvell reviewed the form, he threatened to place Allen in segregation if he submitted the form. Allen said that Sgt. Norvell told him that it was not "worth it." Allen stated that, when he insisted on filing the form, Sgt. Norvell called the watch commander and discussed falsifying a refusing an order disciplinary charge against him. He said he was taken to segregation and subsequently served with the disciplinary charge.

Allen stated that, during the March 4, 2021, encounter with Sgt. Norvell, he never requested to be moved. He said that the only statements he made were concerning being threatened by staff and fearing for his safety. He stated that Sgt. Norvell never gave him an order to return to my cell, "which in any event would

---

[2] The court assumes that the reference to "May 4" is in error since Allen refers to these events occurring on March 4, 2021, elsewhere.

have been impossible as [he] was in restraints for the entirety of the encounter." (Docket Item No. 55-2 at 2.) Allen stated that Sgt. Norvell falsified the March 4, 2021, Disciplinary Offense Report in retaliation for Allen's reporting staff misconduct.

Norvell filed a Declaration Pursuant to 28 U.S.C. § 1746, (Docket Item No. 51-1) ("Declaration"), in support of the Motion. In this Declaration, Norvell stated that he recalled "an incident in which Allen refused to return to his cell in B Building at Keen Mountain." Norvell stated that Allen was assigned to Cell B-2-223 in general population at the time. Norvell stated, "[a]ccording to the Disciplinary Offense Report, Officer Mullins advised me that Allen needed to speak with me in my office. Allen refused multiple orders to return to his housing unit and stated, 'I ain't going back in this pod, I need out of this building.' Allen requested to be moved to segregation and completed an Inmate Fear for Life or Safety Statement, in which he made allegations that Officer Hurley and Sergeant Waldron had threatened him." (Declaration at 1-2.)

Norvell stated that he charged Allen with Disobeying a Direct Order, Disciplinary Offense Code 201A, due to his refusal to return to general population. Allen was taken to segregation. A copy of the March 4, 2021, Disciplinary Offense Report is attached to the Declaration as Enclosure A.

In his Declaration, Norvell also stated:

> The Building Lieutenant and the Unit Manager have the authority to move an inmate to another cell. Cell changes are generally made during the first week of the month. Multiple factors are considered before an inmate is moved to another cell to ensure that both inmates are compatible.
> … In Allen's case, he was requesting to be moved to segregation based on his claim that he feared for his safety. Accordingly, segregation was his only housing option as far as a cell change on March 4, 2021. Moving an inmate to a segregation cell requires

5

justification. Allen stated that he was afraid of staff, and he also requested to go to segregation. Based on Allen's refusal to return to his housing unit, I charged him with disobeying a direct order for not following orders. After an inmate is placed in segregation, also known as the Restorative Housing Unit (RHU), staff assesses the inmate for a proper housing assignment.

(Declaration at 2.)

Norvell stated that he had no knowledge that Officer Hurley or Sgt. Waldron had threatened Allen. While Norvell worked the same shift as Hurley and Waldron, he said that they worked in different buildings. Norvell also stated:

> I had no reason to retaliate against Allen or any inmate. I do not recall ever having any problems with Allen. My decision to charge Allen on March 4, 2021[,] was based solely on his refusal to return to his housing unit. I did not charge him in retaliation for him making claims against staff.  As Allen asked to be move to segregation for his safety, the charge supported the rationale for the segregation housing assignment.

(Declaration at 2-3.)   Norvell stated that Operating Procedure, ("OP"), 861.1[3] governs Offender Discipline and states that an inmate who refuses a direct order, including refusing to move to a housing assignment, may be charged with disobeying a direct order, in violation of Offense Code 201(a) or 201(b). Norvell attached a copy of the relevant portion of OP 861.1, in effect as of April 1, 2016, as Enclosure B to his Declaration.  Norvell stated that VDOC records indicated that Allen was returned to general population in the A Building at Keen Mountain on March 16, 2021.

---

[3] In his Declaration, Norvell cites "OP 861" as governing Offender Discipline; however, OP 861.1, entitled "Offender Discipline, Institution," is attached to the Declaration. This Memorandum Opinion will cite to OP 861.1.

The March 4, 2021, Disciplinary Offense Report, attached to the Declaration as Enclosure A, states in the "Description Of The Offense" section:

> On the above date at the approximate time of 0930, Officer R. Mullins did advise me that inmate K. Allen … needed to speak with me in my office. Upon entering my office, Inmate Allen did refuse multiple direct orders to return to housing stating, "I ain't going back in this pod. I need out of this building." Inmate Allen … is being charged per OP 861.1 for refusing a direct order and is being referred to RHU. No force used. End of report.

(Docket Item No. 55-1 at 4.) The Disciplinary Offense Report shows that the Hearing Officer found Allen guilty of Offense Code 201A – Disobeying an Order and imposed a $15 fine. (Docket Item No. 55-1 at 5.)

Also attached to the Disciplinary Offense Report is an "Inmate fear for life or safety statement" dated 3-4-21 and stating that Allen feared for his life or safety in B Building. It states:

> I have been threatened by Ofc. Hurley and Sgt. Waldron. Ofc. Hurley approached me [threateningly] after I stated my intent to take legal action at that time I was falsely charged by him and taken to segregation. I was in fear for my safety at that point and requested not to be housed around this officer. I was again put back in B1 where he is located. I was then called a ni**er and a boy in a subsequent altercation with Sgt. Waldron in B building. I was again falsely charged and sent to segregation by Sgt. Waldron who threatened to knock my teeth out. I again requested not to be placed back in B-building around these officers. I was again placed in B building when I submitted a request to be moved which was ignored. I filed an emergency grievance which was denied. I have filed a lawsuit against Ofc. Hurley which he has already shown retaliation against. That suit is pending in the Western District of Va. I am fearful of his actions when he receives it.

(Docket Item No. 51-1 at 9.)

Also attached to the Disciplinary Offense Report is a Request for Documentary Evidence form completed by or for Allen stating that he was requesting a copy of the "Fear for life or safety form" for use as documentary evidence on his disciplinary charge. This form states:

> [The "Fear for life or safety" form] will show that I submitted this form and it was signed by Sgt. Norvell acknowledging receipt and by obligation the staff would have had to take me to segregation against my will to ensure my safety under the 8th amendment "duty to protect." Therefore it would be impossible that I could refuse to go back to the pod because I was being taken to segregation against my will.

(Docket Item No. 51-1 at 10.)

Also attached to the Disciplinary Offense Report is a Witness Statement dated 3-13-21 from R. Mullins, which states:

> Offender K. Allen DID inform myself, C/O Mullins, that he feared for his safety and well being in B bldg. Offender Allen was then placed in mechanical restraints and escorted to B bldg. Sgt. Office where he refused to go back to his assigned cell. Offender Allen was then escorted by Sgt. Mills & Sgt. Norvell to RHU.

(Docket Item No. 51-1 at 12.)

Also attached to the Disciplinary Offense Report is a Reporting Officer Response Form, on which it appears that defendant Norvell responded to the following questions:

> Question #1: Did Karsten Allen submit a Fear for life form?
> …
> Response #1: Yes.
> Question #2: Did you order Karsten Allen to return to the pod after he reported to you that his life was in danger?
> …
> Response #2: Yes.

> Question #3: Did Karsten Allen specifically make the statement that you submitted in your report?
>
> …
>
> Response #3: Yes.
>
> Question #4: Was Karsten Allen taken to segregation against his will on 3-4-21 as a result of his submission of the Fear for life or safety form?
>
> …
>
> Response #4: No. He submitted a fear for life form and wanted to go to C-2.

(Docket Item No. 51-1 at 14.)

## II. Analysis

In his Motion, Norvell argues that summary judgment should be entered in his favor because there is no genuine dispute of fact, and he is entitled to judgment as a matter of law. With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must

show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The plaintiff asserting a § 1983 claim has the burden of proof. *See Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002). The plaintiff in this case, Allen, seeks damages from the defendant, Norvell, based on his claim that Norvell retaliated against him for filing an emergency grievance by placing a false disciplinary charge against him. The Fourth Circuit has held that an inmate's right to be free from retaliation for accessing the courts also includes a right to be free from retaliation for accessing a prisoner grievance procedure. *See Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 544-46 (4th Cir. 2017). To prevail on a claim of retaliation, a prison inmate must persuade the court that (1) he was engaged in protected First Amendment activity, (2) a defendant took some action that adversely affected the prisoner, and (3) there was a causal relationship between the inmate's protected activity and the defendant's conduct. *See Booker v. S.C. Dep't. of Corrs.*, 583 F. App'x 43, 44 (4th Cir. 2014) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)).

It is well-established that the filing of a grievance or a lawsuit is protected First Amendment conduct that would satisfy the first element of a First Amendment retaliation claim under § 1983. *See Booker*, 855 F.3d at 541; *Hudspeth v. Figgins*,

584 F.2d 1345, 1348 (4th Cir. 1978). Here, there is no dispute that Allen filed an Emergency Grievance, claiming he feared harm by Hurley and Waldron on March 3, 2021. "With respect to the second element, the plaintiff is required to show that a defendant's allegedly retaliatory conduct caused 'more than a de minimis inconvenience' and that it 'would likely deter a person of ordinary firmness from the exercise of First Amendment Rights.'" *Wall v. Clarke*, 2023 WL 2703138, at *3 (W.D. Va. Mar. 29, 2023) (quoting *Constantine*, 411 F.3d at 500). Both the Fourth Circuit and this court have recognized that the filing of a disciplinary charge against a prisoner, especially when it resulted in, or contributed to, the prisoner's transfer from general population to the much more restrictive environment of a segregated housing unit, is a sufficient adverse action. *See Roscoe v. Bentley,* 2021 WL 4267716, at * 12 (W.D. Va. Sept. 20, 2021) (citing *Booker*, 583 F. App'x at 44). Here, there is no dispute that Norvell filed a disciplinary charge against Allen for Disobeying a Direct Order, Disciplinary Offense Code 201A, on March 4, 2021.

The third element of 11etailation claim requires the plaintiff to demonstrate that "there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy,* 858 F.3d 239, 249 (4th Cir. 2017) ("*Martin I*"). In 2020, the Fourth Circuit held that the burden-shifting framework set out in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), should apply to evaluate the causation element of a prisoner's retaliation claim under the First Amendment. *See Martin v. Duffy*, 977 F.3d 294, 299-300 (4th Cir. 2020) ("*Martin II*"). "For a plaintiff to meet his prima facie burden of causation, he must show '(1) that the defendant was aware of [his] engaging in protected activity' and (2) 'some degree of temporal proximity to suggest a causal connection.'" *Shaw v. Foreman*, 59 F.4th 121, 130-31 (4th Cir. 2023) (quoting *Constantine*, 411 F.3d at 501). In *Martin II*, the Fourth Circuit held that, after a prisoner plaintiff established a prima

facie case of retaliation, including showing that his protected conduct was a substantial or motivating factor in a defendant's adverse action, a defendant may defeat the claim by proving by a preponderance of the evidence, that the same action would have been taken in the absence of the prisoner's protected conduct. *See Martin II*, 977 F.3d at 301. The court further held that, in a "unitary event case" -- a case where the plaintiff's protected conduct is a single event "that could prompt either a permissible or an impermissible reason on the part of the defendant to act," *Greenwich Citizens Comm., Inc. v. Cntys. of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 33 (2d Cir. 1996), the same decision test is met if the defendant would have reached the same decision absent a retaliatory motive. *See Martin II*, 977 F.3d at 303-04.

Based on the evidence before the court, I find that there is a genuine dispute of material fact as to the causation element of Allen's retaliation claim that prevents the entry of summary judgment in Norvell's favor. I find that Allen has produced evidence sufficient to establish a prima facie case of causation. As stated above, the evidence before the court establishes that Allen filed an Emergency Grievance claiming he feared harm by Hurley and Waldron on March 3, 2021. The evidence also establishes that Norvell was aware of Allen filing this Emergency Grievance when he charged Allen with a disciplinary offense on March 4, 2021, in that Allen completed an "Inmate fear for life or safety statement" on that date, on which he stated that he had filed an Emergency Grievance.[4] Thus, Allen has produced evidence that Norvell was aware of his engaging in protected activity in close temporal proximity to the adverse action Norvell took against him. *See Shaw*, 59

---

[4] Allen also stated on this form that he had filed a lawsuit against Hurley in the Western District of Virginia. A review of the court's records, however, shows that no such suit was pending against Hurley on March 4, 2021, in that the only lawsuits Allen has filed in this court against Hurley were not filed until later in 2021. *See* Case No. 7:21cv230, filed April 21, 2021, and Case No. 7:21cv641, filed December 20, 2021.

F.4th at 130-31. Having established a prima facie case of causation, under *Martin II*, the burden shifts to Norvell to prove by a preponderance of the evidence that he would have taken the same action in the absence of the plaintiff's protected activity. *See Shaw*, 59 F.4th at 130 (citing *Martin II*, 977 F.3d at 299-300). Norvell, through his Declaration, has produced evidence that he charged Allen with a disciplinary offense because Allen refused an order to return to his assigned cell. Norvell further produced evidence he charged Allen with this disciplinary offense so that he could place Allen in segregation housing because that was the only way he could honor Allen's request to be moved out of the B Building. Allen, through his verified pleadings, has denied that he ever refused an order to return to his assigned cell. Therefore, I find that there is a genuine dispute of material fact as to causation, preventing the entry of summary judgment, and I will deny the Motion.

    An appropriate Order will be entered.

    **ENTERED**: May 1, 2024.

                                          /s/ *Pamela Meade Sargent*
                                          UNITED STATES MAGISTRATE JUDGE